OPINION OF THE COURT
Jerome L. Steinberg, J.
This is one of approximately 20 small claims cases which were tried simultaneously because of substantially identical facts. All actions arose out of the burglary of defendant’s jewelry store on the night of May 12, 1979 or the morning of the following day. All cases, save this one, involved merchan *873 dise delivered to defendant for repair, and all were previously decided by this court, based upon long-established bailor-bailee principles.
The instant case presents a different problem, which apparently is one of first impression in this State. Mrs. Conway had purchased an article of jewelry from defendant on what is commonly known as a "lay-away plan”. Claimant paid a portion of the agreed price, and made additional payments from time to time under an arrangement whereby seller set aside or "laid away” the item in question until the full purchase price was paid. Unfortunately, it was stolen prior to such eventuality.
There was insufficient evidence presented at the joint trials for the court to conclude that defendant was negligent in the safeguarding of the stolen items. The security system employed by defendant, while not the best available, was apparently used by other jewelry stores and banks in the general locale. In order to gain access to the items in question, the burglar(s) had to disconnect or by-pass two separate burglar alarm systems, rip open a locked iron gate, and tear apart a locked safe.
There are two problems presented for consideration of the court:
First, absent a finding of negligence on the part of defendant, who bears the risk of loss under these circumstances? If the risk is upon the buyer, then under the Uniform Commercial Code, claimant would be denied any recovery, in the absence of negligence on the part of seller; if the risk was seller’s, we reach a second question, to wit: the nature or amount of recovery owed to claimant.
Claimant and defendant did not have a true bailor-bailee relationship. Defendant was not holding the necklace for claimant’s benefit. Rather, it was holding it for its own benefit, to ensure payment of the balance of the purchase price. Clearly, the parties never contemplated the occurrence which brings them into court, and there was no specific agreement between them to cover the situation. Thus, we must look to the Uniform Commercial Code for guidance.
Section 2-509 of the Uniform Commercial Code is entitled "Risk of Loss in the Absence of Breach”. Subdivision (1) deals with the shipment of goods by a common carrier, and is clearly inapplicable to the case at bar.
Subdivision (2) deals with goods held by a bailor without *874 being moved. This subdivision contemplates the rights and obligations of a warehouseman and is also inappropriate.
Subdivision (3) states as follows: "In any case not within subsections (1) or (2), the risk of loss passes to the buyer on his receipt of the goods if seller is a merchant; otherwise the risk [of loss] passes to the buyer on tender of delivery.”
Here, the claimant never received possession of the necklace. There was no written contract of sale between the parties. All claimant has is a receipt given to her by defendant. Claimant did not have the right to use or possession of the necklace until some time in the future, when the balance of the purchase price was paid. There was no delivery. Defendant is clearly a merchant under subdivision (1) of section 2-104 of the Uniform Commercial Code, which defines merchant as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction”. Even had payment been made in full, the risk of loss would remain with defendant until actual receipt by buyer or tender of delivery by seller. The underlying theory is that since a merchant, who is to make physical delivery at his own place of business, has complete control of the goods, he is expected to ensure his interest in them. (Ramos v Wheel Sports Center, 96 Misc 2d 646.)
Having reached a conclusion on the question of liability, we turn to the second question, that of damages. The article in question was a necklace of gold filagree beads, uniformly interspersed with pearls and coral beads. The agreed price was $450, upon which claimant had made payments to the date of theft of $265. The value of the necklace has appreciated substantially between the time the "lay away” began, and the time of its theft; and therein lies the principal bone of contention between the parties.
Claimant asserts that the recovery should be with a duplicate necklace or the value thereof in the market at the time of its theft. She has offered to accept a similar necklace. Defendant argues that its maximum liability should be the $265 in payments made by claimant.
Clearly, the court cannot direct the award of a similar necklace. Specific performance is not a remedy available in Small Claims Court. It appears from the testimony that the necklace was a unique item. While others may have been manufactured at one time, defendant had only one such *875 necklace in his store, and his testimony that the necklace is no longer available is uncontradicted. Claimant has come forth with no evidence that such a necklace is readily available (although afforded an opportunity to do so) nor even that a substantially similar necklace is to be found. On the contrary, her own statements indicate that it was unique in its beauty and was similar to no other necklace that she had seen.
When the subject matter of a contract is destroyed (or, as in this case, stolen) through no fault of the seller, the contract is deemed avoided. (Uniform Commercial Code, § 2-613, subd [a].) If the chattel was identified and was unique it would come under this section of the Uniform Commercial Code. (Valley Forge Flag Co. v New York Dowel & Moulding Import Co., 90 Misc 2d 414, 415.) This would also be the case under longstanding contract principles of impossibility of performance.
The defendant’s only obligation is to return what has already been paid to him. Claimant would not be entitled to the market value of the necklace at the time of its theft. There was no testimony as to the value of the necklace at that time, and the court is not invested with jurisdiction to speculate on values of jewelry or gold necklaces. Had there been such testimony as to "current value”, many other interesting questions as to measure of damages and windfall profit would have had to be considered. However, since such is not the case, the court declines to issue such dicta in this small claims action.
The contract between claimant and defendant is deemed avoided under subdivision (a) of section 2-613 of the Uniform Commercial Code and defendant shall refund claimant her $265.